**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

In re:  KARL LINARD MALLOY,                    Case No. 23-33442-KRH
                  Debtor.                              Chapter 13

**MEMORANDUM OPINION AND ORDER**
**APPROVING FEE APPLICATION OF KANE & PAPA, P.C.**

On October 5, 2023, Karl Linard Malloy (the "Debtor") filed, pro se, a voluntary petition under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Virginia (the "Court"), thereby commencing the above-captioned bankruptcy case (the "Bankruptcy Case").  On October 20, 2023, Kane & Papa, P.C. (the "Applicant") noted an appearance in the Bankruptcy Case as counsel of record to the Debtor.  Notice of Appearance, ECF No. 16.  The Applicant elected to seek compensation and reimbursement of expenses in this Bankruptcy Case through filing fee applications pursuant to Local Bankruptcy Rule ("LBR") 2016-1(C)(1)(c)(ii).  Disclosure of Comp. of Att'y for Debtor in a Ch. 13 Case ¶ 6(b), ECF No. 19 at 53.  On November 22, 2023, the Applicant filed a *Motion for Leave to Withdraw as Counsel* [ECF No. 32], which the Court granted on November 30, 2023, Order Granting Leave of Ct. to Withdraw as Couns., ECF No. 52.

This matter now comes before the Court upon the *Application by Kane & Papa, P.C., For Compensation* [ECF No. 85] (the "Application"[1]), whereby the Applicant seeks compensation in the amount of $8,235.00.[2]  On February 6, 2024, the Debtor filed the *Debtor's Opposition to Application by Kane & Papa, P.C. for Compensation* [ECF No. 86] (the "Opposition").  The

---

[1] As more fully discussed herein, public access to the original application was restricted following the Hearing. The Applicant refiled the Application and a redacted version of Exhibit A thereto.  All citations to the Application in this Memorandum Opinion will refer to the publicly available version of the Application [ECF No. 124] or to the separately docketed Exhibit A to the Application [ECF No. 108].

[2] There was a typographical error in the final "Wherefore" paragraph of the Application.

Debtor argued in the Opposition that the Application contained material misstatements and privileged information. Opp'n ¶¶ 3, 7, 8, ECF No. 86 at 1-2. Filing of the Opposition converted the Application into a contested matter (the "Contested Matter") governed by Rule 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"). *See* Fed. R. Bankr. P. 9014.

The Court has subject matter jurisdiction over this Contested Matter pursuant to 28 U.S.C. § 1334 and the General Order of Reference from the United States District Court for the Eastern District of Virginia dated August 15, 1984. The Contested Matter is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O). Venue is appropriate pursuant to 28 U.S.C. § 1409(a).

The Court issued a *Scheduling Order* [ECF No. 87] for the Contested Matter pursuant to Rule 16(b) of the Federal Rule of Civil Procedure (the "Civil Rules"), as made applicable to this Bankruptcy Case by Bankruptcy Rule 7016. The Scheduling Order set a final evidentiary hearing on the Application on February 21, 2024, at 12:00 p.m. (the "Hearing").[3] In advance of the Hearing, the Scheduling Order required (1) any party wishing to introduce evidence at the Hearing to file a list of proposed exhibits and the exhibits by February 14, 2024, with any objections thereto to be filed by February 16, 2024; (2) any party wishing to examine a witness at the Hearing to file a list of witnesses by February 14, 2024; (3) any party wishing to seal in whole or in part any pleading and/or the Hearing to file a motion in compliance with Bankruptcy Rule 9037, along with a motion to expedite hearing scheduled for the same date and time as the Hearing;[4] (4) the Debtor to file pleadings (a) identifying the alleged material misstatements made in the Application; and

---

[3] *See* Fed. R. Bankr. P. 9014(c) (permitting the Court to apply the rules in Part VII of the Bankruptcy Rules to this Contested Matter).

[4] By his Opposition, the Debtor also requested that the Court "hold an evidentiary hearing either in camera or in Court while sealed" to further consider the Application and the Opposition. Opp'n ¶ 8, ECF No. 86 at 2. However, the Debtor did not make a timely request to seal in accordance with the Scheduling Order and, as such, such request was waived.

2

(b) identifying each communication contained in the Application alleged to be subject to the attorney-client privilege by February 14, 2024. Scheduling Order ¶¶ 2-7, ECF No. 87 at 1-3. The Scheduling Order also cautioned that failure to comply therewith "shall result in appropriate sanctions," and that the failure to provide evidence "in accordance with the terms of this Scheduling Order [] may result in the denial, in whole or in part, of the Application." *Id*. ¶¶ 1, 9, ECF No. 87 at 1, 3.

On February 14, 2024, the Debtor timely filed the *Debtor's First Response to Scheduling Order* [ECF No. 89] concerning the alleged misstatements (the "First Response"); the *Debtor's Second Response to Scheduling Order* [ECF No. 90] concerning the asserted attorney-client privilege (the "Second Response"); and the *Debtor's Exhibits A-H* [ECF No. 102]. The Debtor did not file a witness list.

On February 15, 2024, the Applicant untimely filed its exhibit list, Ex. List of Kane & Papa, P.C., ECF No. 91, which identified the Application as the Applicant's sole exhibit, and its witness list, Witness List of Kane & Papa, P.C., ECF No. 92, as amended at ECF No. 93. The Debtor objected to the Applicant's exhibit and witness lists on the grounds of timeliness, among other things. Debtor's Obj. to Witness List of Kane & Papa, P.C., ECF No. 97; Debtor's Obj. to Ex. List & Ex. of Kane & Papa, P.C., ECF No. 98. By the Applicant's further reply [ECF No. 100] (the "Reply"), the Applicant apologized for untimely filing its lists one day late and attributed the delay to an administrative error. The Applicant stated that the lists were immediately filed with the Court and emailed to the Debtor once counsel realized the mistake. Reply ¶ 3, ECF No. 100 at 1. The Applicant attached the parties' Engagement Agreement (the "Engagement Agreement") as an exhibit to the Reply. *See id.* Ex. A, ECF No. 100 at 4-6. The Engagement

3

Case 23-33442-KRH    Doc 125    Filed 03/01/24    Entered 03/01/24 16:51:20    Desc Main
Document      Page 4 of 15

Agreement, which was executed by both the Applicant and the Debtor, specified the terms of the Applicant's employment by the Debtor. *Id.*.[5]

On February 21, 2024, the Court conducted the Hearing on the Application. The Applicant and the Debtor, pro se,[6] appeared at the Hearing. The Applicant offered testimony into evidence at the Hearing. The Debtor provided rebuttal testimony only. The Contested Matter being fully briefed and having considered the evidence adduced at the Hearing and the record in this Bankruptcy Case, the Court now makes its determination on the Application as described below.

As a preliminary matter, the Court must consider the Debtor's objections to the Applicant's evidence. First, as the Debtor correctly points out, both lists were filed one day after the deadline set by the Scheduling Order. Because the lists were untimely filed, the Debtor argued that the Applicant should not be permitted to introduce testimony from its two witnesses, and it should not be permitted to introduce the Application into evidence.

The Scheduling Order explicitly stated that a party's failure to comply therewith would result in sanctions. Scheduling Order ¶¶ 1, 9, ECF No. 87 at 1, 3. The Court may use its discretion to impose a sanction as described in Civil Rule 37(b) for violation of a scheduling order issued pursuant to Civil Rule 16(b). *See Rabb v. Amatex Corp.*, 769 F.2d 996, 999 (4th Cir. 1985); *LeCompte v. Manekin Constr., LLC*, 573 B.R. 187, 193 (D. Md. 2017) (affirming bankruptcy court's imposition of sanctions under Bankruptcy Rule 7037 for violation of a scheduling order). These sanctions include preclusion of evidence, dismissal, default, and contempt of court for failure to comply with court orders. Fed. R. Civ. P. 37(b). "In lieu of or in addition to the listed

---

[5] The Engagement Agreement was introduced as Exhibit 2 during the Hearing and was admitted without objection from either party.

[6] The Debtor has an undergraduate degree from Harvard University and a graduate degree from the University of Virginia School of Law. While the Debtor is licensed to practice law in the State of Maryland, the State of New York, and the District of Columbia, he is not a member of the Virginia State Bar.

4

sanctions [in Civil Rule 37(b)], the court may require the disobedient party to pay the reasonable expenses, including attorney's fees, caused by the failure. *Chase Bank USA, N.A. v. Chau* (*In re Chau*), No. 06-10270-SSM, 2007 WL 121121, at *2, 2007 Bankr. LEXIS 114, at *5 (Bankr. E.D. Va. Jan. 11, 2007).

In deciding which of these sanctions a court should impose, courts in the Fourth Circuit should consider the following four factors: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." *Anderson v. Found. for Advancement, Educ., & Emp. of Am. Indians*, 155 F.3d 500, 504 (4th Cir. 1998) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503-05 (4th Cir. 1977)).

First, there is no evidence that the Applicant acted in bad faith. To the contrary, the Applicant expressed contrition for untimely filing its exhibit list and witness list both in the Reply, Reply ¶¶ 1-2, ECF No. 100 at 1, and during the Hearing. This factor weighs against imposing a drastic sanction.

Second, the amount of prejudice suffered by the Debtor is negligible. When prompted by the Court during the Hearing, the Debtor stated that the tardy filings reduced the time that the Debtor had to respond. As a pro se party, the Debtor does not have access to the Court's electronic case management system and was required to file his Objections in the Clerk's Office. This required the Debtor to drive from his home in Powhatan, Virginia, to the Clerk's Office in Richmond, Virginia – a roundtrip of approximately eighty (80) miles.[7]

---

[7] During an earlier hearing conducted in this case, the Debtor stated that he traveled approximately eighty (80) miles roundtrip. When questioned by the Court at the Hearing whether this was accurate, the Debtor agreed.

5

The Applicant explained that the one-day delay in filing the lists was due to an administrative oversight. It further stated that once it became aware of the oversight, the Applicant filed both lists with the Court and emailed copies of them to the Debtor. The Applicant highlighted the fact that the only Exhibit included on the list was the fee Application, which had been on file and in the Debtor's possession since January 16, 2024, *see* ECF Nos. 85, 124, a period of twenty-nine (29) days before the exhibit filing deadline imposed by the Scheduling Order. Similarly, only James Kane and Jason Kane were listed as potential witnesses. They were the two attorneys who had worked with the Debtor. The Applicant argued that there could be no element of surprise as to whom it might call to testify at the Hearing or as to the sole exhibit on which the Applicant intended to rely, of which document the Court could have taken judicial notice in any regard.

The Court agrees with the Applicant that the substance of the proposed exhibit (the Application) and the identity of the two witnesses (the Debtor's former attorneys), were entirely foreseeable. The Court finds that the delayed filing of the Applicant's lists caused minimal prejudice to the Debtor. The only harm the untimely filing inflicted upon the Debtor resulted from having to physically come to the Court to file his Objections when he otherwise may have been able to submit the Objections via mail.

Third, it is imperative upon attorneys, as officers of the Court, to adhere to deadlines imposed by court orders. The Applicant failed to do so here. The Court finds that this factor weighs in favor of granting a sanction.

The Court should impose the least drastic sanction that would compel compliance with it order. *See Anderson*, 153 F.3d at 505; *Wilson*, 561 F.2d at 504 ("The power to impose sanctions under Rule 37(b) . . . is discretionary . . . . It is not, however, a discretion without bounds or limits but one to be exercised discreetly."). The sanction that the Debtor asked the Court to impose

6

would prohibit the Applicant from introducing into evidence the Application and any witness testimony.  Without the receipt of any documentary or testimonial evidence, the Court would have no record from which to evaluate the Application.  Imposition of such a sanction for missing the deadline by one day would result in entry of default judgment against the Applicant in favor of the Debtor.  As default judgment is the "most severe in the spectrum of sanctions provided by statute or rule," *Wilson*, 561 F.2d at 503 (quoting *Nat'l Hockey League v. Metro. Hockey Club*, 427 U.S. 639, 643 (1967)), it is not the least drastic sanction the Court could impose and is unwarranted under these circumstances.

Nonetheless, the omission cannot be dismissed entirely.  Some sanction is warranted.  Given the minimal prejudice and the lack of bad faith on the part of the Applicant, the Court finds that the Applicant should be required to reimburse the Debtor for the costs the Debtor incurred in connection with preparing and filing the Objections.  *See In re Chau*, 2007 WL 121121, at *2, 2007 Bankr. LEXIS 114, at *5.  In the exercise of its discretion, the Court awards a sanction in the amount of $270, which the Court determines to be reasonable to compensate the Debtor for his mileage and his time in preparing his objections to the Applicant's evidence on the grounds of timeliness.

The Debtor also objects to the introduction of the Application and to the Applicant's witness testimony on the grounds of attorney-client privilege.  The Debtor has made clear that he does not waive the privilege.  Opp'n at ¶ 8, ECF No. 86 at 2; 2nd Resp. ¶¶ 12-14, ECF No. 90 at 4; Debtor's Obj. to Witness List of Kane & Papa, P.C. ¶ 10, ECF No. 97 at 2; Debtor's Obj. to Ex. List & Ex. of Kane & Papa, P.C. ¶ 9, ECF No. 98 at 2.  During the Hearing, the Debtor properly renewed his assertion of the attorney-client privilege.

7

The attorney-client privilege "only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney." *Upjohn Co. v. U.S.*, 449 U.S. 383, 395 (1981). To determine whether the privilege applies, the Fourth Circuit applies a "classic test" wherein

> [t]he privilege applies only if (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1008) (quoting *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982)). "[T]he communication claimed to be privileged must have been made in confidence" and the proponent of the privilege has the burden of proof. *Id*. at 383, 384 (internal citation omitted).

Normally, the attorney-client privilege does not apply "to billing records and expense reports." *Chaudhry v. Gallerizzo*, 174 F.3d 394, 402 (4th Cir. 1999) (citation omitted).

> [T]he identity of the client, the amount of the fee, the identification of payment by case file name, and the general purpose of the work performed are usually not protected from disclosure by the attorney-client privilege. However, correspondence, bills, ledgers, statements, and time records which also reveal the motive of the client in seeking representation, litigation strategy, or the specific nature of the services provided, such as researching particular areas of law, fall within the privilege.

*Id.* (quoting *Clarke v. Am. Com. Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).

The first, second, and fourth prongs of the classic test are satisfied in the case at bar because the Debtor, as holder of the privilege, was a client of the Applicant, who acted as the Debtor's

8

lawyer. The Debtor has claimed the privilege, and he has not waived it. By his Second Response and at the Hearing, the Debtor asserts that twelve time entries contain privileged information as contemplated by *Chaudhry*. Upon review of the Application, the Court finds that only two of the time entries could possibly reveal privileged information. Accordingly, the Court, by separate order, shall restrict access to the Application and require the Applicant to re-file the Application, with the two time entries identified on the record at the Hearing redacted.[8] The Court finds that the attorney-client privilege does not bar the admission into evidence of the Application, as redacted.

The Debtor did not submit a motion requesting that the Hearing be sealed in compliance with the Scheduling Order. At the Hearing, the Debtor did assert that any testimony from the Applicant could reveal privileged information. The Court overruled this general assertion of privilege and instructed the Debtor to object to specific questions that may solicit testimony concerning a privileged communication. The Debtor did not objection to any specific testimony on this basis.

Having addressed these preliminary objections, the Court now considers the merits of the Application, which requests an award of total compensation in the amount of $8,235, with $6,339 to be compensated out of the retainer the Applicant holds and $1,896 to be remitted by the Debtor. "[C]ounsel in a Chapter 13 case may be compensated . . . 'for representing the interests of the debtor' in a bankruptcy case based on 'the benefit and necessity of such services to the debtor as well the other factors set forth [in § 330 of the Bankruptcy Code].'" *In re Grubb*, No. 07-30253-

---

[8] The redacted Application is now filed at ECF No. 108.

KRH, 2010 WL 396181, at *4 (Bankr. E.D. Va. Jan. 25, 2010) (quoting 11 U.S.C. § 330(a)(4)(B)) (alteration in original).[9]  The factors set forth in section 330 are:

(A)  the time spent on such services;
(B)  the rates charged for such services;
(C)  whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
(D)  whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
(E)  with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
(F)  whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S. C. § 330(a)(3).  The factors enumerated in section 330 of the Bankruptcy Code "are not exclusive.  Bankruptcy courts in the Fourth Circuit have supplemented these considerations with the *Johnson* factors."  *In re Nordic Aviation Designated Activity Co.*, No. 21-33693-KRH, 2022 WL 10716251, at * 18, 2022 Bankr. LEXIS 2949, at *52 (Bankr. E.D. Va. Oct. 18, 2022); *see also*

---

[9]  Because "[t]he Eastern District of Virginia has a high incidence of Chapter 13 filings," *In re Grubb*, 2010 WL 396181, at *2, courts in this district have had occasion to consider issues involving attorney's fees in a variety of Chapter 13 cases, *see, e.g.*, *Boleman Law Firm, P.C. v. U.S. Tr.*, 355 B.R. 548 (E.D. Va. 2006); *In re Robinson*, 368 B.R. 492 (Bankr. E.D. Va. 2007); *In re Bryant*, 346 B.R. 406 (Bankr. E.D. Va. 2006).  Also because of this high incidence of Chapter 13 filings, the district has adopted local rules that permit debtors' counsel in Chapter 13 cases to elect compensation via a standard "no look" fee or, in the alternative, by submitting fee applications in conformity with Bankruptcy Rule 2016(b).  *See* LBR 2016-1(C).

> Counsel are by no means restricted to the "no-look" fee--the procedure is simply intended to simplify the application process for the large majority of cases in which the "no-look" amount will provide reasonable compensation. If the attorney knows from the inception of the case that unusual issues are present, the attorney may contract with the client for a higher fee, but in that event must submit a formal fee application.

*In re Robinson*, 368 B.R. 492, 499 (Bankr. E.D. Va. 2007).  In this Bankruptcy Case, the Applicant elected to file formal fee applications.  Accordingly, the Application was required to file "an application setting forth detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested." Fed. R. Bankr. P. 2016(a).

*Boleman Law Firm, P.C.*, 355 B.R. at 552 (citing *EEOC v. Serv. News Co.*, 898 F.2d 958 (4th Cir. 1990)). The twelve *Johnson* factors to be considered in evaluating the reasonableness of attorney's fees are:

(1) the time and labor expended;
(2) the novelty and difficulty of the question raised;
(3) the skill required to properly perform the legal services rendered;
(4) the attorney's opportunity costs in pressing the instant litigation;
(5) the customary fee for like work;
(6) the attorney's expectations at the outset of the litigation;
(7) the time limitations imposed by the client or circumstances;
(8) the amount in controversy and the results obtained;
(9) the experience, reputation and ability of the attorney;
(10) the undesirability of the case within the legal community in which the suit arose;
(11) the nature and length of the professional relationship between attorney and client; and
(12) attorney's fees awards in similar cases.

*Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir.1978) (citing *Johnson v. Ga. Highway Express*, 488 F.2d 714, 717-19 (5th Cir.1974)). The applicant bears the burden of proving the reasonableness of and justification for the requested compensation. *In re Grubb*, 2010 WL 396181, at *4.

The Application in the case at bar seeks an award of compensation totaling $8,235. Appl. ¶ 12, ECF No. 124 at 3-4. The Debtor paid a retainer of $6,784 at the commencement of the engagement to cover anticipated fees and costs. Reply Ex. A ¶ 1, ECF No. 100 at 4. The Applicant continues to hold $6,339 of that retainer in its trust account. Appl. ¶ 13, ECF No. 124 at 4. The Applicant seeks authority to apply the $6,339 held in trust against the requested amount of $8,235 and for the Debtor to remit the difference of $1,896. *Id.* 4, ECF No. 124 at 4.

The Court must determine whether the fees sought are reasonable pursuant to section 330(a) of the Bankruptcy Code, as understood within the context of the lodestar method and the

11

*Johnson* factors. To calculate the lodestar, the Court must multiply the reasonable hours expended on the case by a reasonable hourly rate.

The reasonable hourly rate is based on the attorney's experience, skill level, reputation, and prevailing market rates. James Kane "was admitted to practice law in 1989 and has been practicing for 34 years." Appl. ¶ 12, ECF No. 124 at 3. Jason Kane was admitted to practice in 2010. *Id*. Both attorneys are members of this Court's bar and routinely appear in this Court. The Court finds that the work history of the Applicant attorneys reflects "skill and experience in the bankruptcy field." 11 U.S.C. § 330(a)(3)(E). There was also a written Engagement Agreement signed by the Debtor and the Applicant that unambiguously specified the rate the Debtor agreed to pay for the worked performed by each attorney on his behalf. Reply Ex. A, ECF No. 100 at 4-6. By the Engagement Letter, the Debtor agreed to pay the Applicant attorneys $450 per hour. *Id.*, ECF No. 100 at 4. However, the Applicant voluntarily reduced Jason Kane's hourly rate to $350 per hour. Based on the Court's experience in reviewing fee applications, these hourly rates are well within market for the types of services provided by the Applicant. See 11 U.S.C. § 330(a)(3)(F). For these reasons, the Court finds that the rates charged for such services were reasonable and relatively customary for attorneys in this community.

The summary computation set forth in paragraph 12 of the Application indicates that James Kane contributed 6.5 hours at $450 per hour and that Jason Kane contributed 15.1 hours at $350 per hour. Appl. ¶ 12, ECF No. 124 at 3-4. However, the contemporaneous time records attached to the Application reveal (i) that James Kane devoted 6.4 hours, not 6.5 hours, to the representation and (ii) that Jason Kane spent 15.3 hours, not 15.1 hours, on the representation. Appl. Ex. A, ECF No. 108. As evidenced by the Application and buttressed by James Kane's testimony during the Hearing, the Applicant maintained contemporaneous time records during the period of the

12

representation. *See, e.g.*, Appl. Ex. A, ECF No. 108. The Court finds that the contemporaneous time records are an accurate reflection of the time devoted to the work performed. Taking 6.4 hours at $450 per hour and adding 15.3 hours at $350 per hour results in $8,235, which is the amount requested in paragraph 12 of the Application and is the amount stated in the invoice. Appl. ¶ 12 & Ex. A, ECF Nos. 124 at 33-4, 108.

The Court inquired at the Hearing about the difference between the initial retainer that was paid in the amount of $6,784 and the $6,339 presently held in trust. James Kane testified that the portion of the retainer that was collected to pay the filing fee was refunded to the Debtor when the Debtor commenced his case pro se and the Applicant did not have to pay the $313 filing fee. Reply ¶ 5 & Ex. B, ECF No. 100 at 2, 7. However, $6,784 less $313 equals $6,471. *See* 1st Resp. ¶ h, ECF No. 89 at 6. A discrepancy of $132 remained.

Upon further inquiry by the Court, James Kane testified that $80 was paid for a third-party administrative service that the Applicant routinely uses in connection with its Chapter 13 case management practices. This still left a discrepancy of $52. The Applicant was unable to account for this amount at the Hearing. Accordingly, the Court will deduct the unaccounted for $52 amount from the fee calculation. The Court finds that lodestar calculation of allowable compensation is $8,183.[10]

Having determined the lodestar calculation of allowable compensation, the Court must now determine whether the fees sought are reasonable pursuant to section 330(a) of the Bankruptcy Code and are consistent with the *Barber* factors. The Court must consider (i) whether the services rendered for representing the Debtor were beneficial and necessary, 11 U.S.C. § 330(a)(4)(B); (ii) "whether the services were necessary to the administration" of the bankruptcy estate, *id.*

---

[10] $8,235 minus $52 equals $8,183.

13

§ 330(a)(3)(C); and (iii) whether the services were "performed within a reasonable amount of time," *id.* § 330(a)(3)(D). The uncontroverted evidence established that the Applicant's attorneys provided four general categories of service: financial issues, case administration, Chapter 13 plan preparation, and contested matter preparation. Appl. ¶ 6, ECF No. 124 at 2. Each category of service is supported by a description of the various tasks performed. Appl. Ex. A, ECF No. 108. Considering the complexity of the contested matters and the contents of the Debtor's estate, the Court finds that the services provided by the Applicant benefited both the Debtor and the bankruptcy estate and that the tasks were completed within a reasonable amount of time. The Court finds that no downward adjustment need be made to the lodestar amount.[11]

For these reasons, the Court finds the Applicant has satisfied both section 330 of the Bankruptcy Code and the *Johnson* factors. The Court approves the Application in the adjusted amount of $8,183. Accordingly, it is hereby **ORDERED, ADJUDGED, AND DECREED THAT**:

1. The Application is **APPROVED** as set forth herein.

2. Sanctions in the amount of $270 are hereby imposed on the Applicant and awarded in favor of the Debtor.

3. Compensation in the reduced amount of $8,183 is hereby **APPROVED**.

4. The sanctions awarded in favor of the Debtor in paragraph 2 hereof are offset against the compensation awarded to the Applicant in paragraph 3 hereof.

5. The Applicant is authorized and directed to apply the $6,339 it holds in retainer to the fees awarded by this Order.

---

[11] No party requested an upward departure.

6.      The Applicant may file a proof of claim in the Bankruptcy Case for the remaining $1,574, which in turn can be paid in accordance with section 3(a) under the Debtor's Chapter 13 plan, once confirmed.

Dated:   March 1, 2024                    /s/ Kevin R. Huennekens
                                                                 UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:   March 1, 2024

**Copies to:**

**Karl Linard Malloy**
1600 Mill Quarter Road
Powhatan, VA 23139

**James E. Kane**
KANE & PAPA, P.C.
P.O. Box 508
Richmond, Virginia 23218-0508

**Carl M. Bates**
P. O. Box 1819
Richmond, VA 23218

15