**UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| In re:   KARL LINARD MALLOY,<br>Debtor. | Case No. 23-33442-KRH<br>Chapter 13 |

## MEMORANDUM OPINION

On October 5, 2023 (the "Petition Date"), Karl Linard Malloy (the "Debtor") filed, pro se,[1] a voluntary petition under Chapter 13 of Title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned case (this "Bankruptcy Case"). This matter came before the Court on October 30, 2024 (the "Confirmation Hearing") to consider confirmation of the Debtor's *Chapter 13 Plan and Related Motions* [ECF No. 20] (the "Plan"). Kristin Schelin and Mark Watson (collectively, the "Creditors" and together with the Debtor, the "Parties"), as well as the Chapter 13 Trustee, by counsel, objected to confirmation of the Plan (the "Objections") [ECF Nos. 33, 29].[2] The Debtor, the Chapter 13 trustee, and counsel for the Creditors appeared at the Confirmation Hearing. For the reasons set forth below, the Court denied Confirmation of the Debtor's Plan with leave to file an amended plan.

This Memorandum Opinion sets forth the Court's findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").[3]

---

[1] On October 20, 2023, counsel for the Debtor noticed an appearance in the Bankruptcy Case. The Debtor, by his counsel, timely filed the required lists, schedules, and statements [ECF No. 19], as well as the Plan (as defined herein). However, the representation was short-lived, as the Debtor terminated the representation approximately one month later. The Court permitted the Debtor's former counsel to withdraw. Order Granting Leave of Court to Withdraw as Counsel, ECF No. 52. Since entry of that Order in November 2023, the Debtor has continued to proceed self-represented in this Bankruptcy Case.

The Debtor is not a member of the Virginia State Bar, but he is an attorney, licensed to practice law in the State of New York, the State of Maryland, and the District of Columbia. Debtor's Am. Opp. to Mot. to Dismiss ¶ 3, ECF No. 38 at 5.

[2] Without leave of Court, the Debtor filed replies to the pending objections [ECF Nos. 34, 35].

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of

The Court has subject matter jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and the *General Order of Reference* from the United States District Court for the Eastern District of Virginia dated August 15, 1984.  This is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (L), and (O), in which final orders or judgments may be entered by a bankruptcy judge.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1409(a).

The Parties entered into a Central Virginia Multiple Listing Services Purchase Agreement dated February 25, 2022, and ratified February 26, 2022 (together with an integrated Bill of Sale, the "Contract"), whereunder the Debtor agreed to convey, and the Creditors agreed to purchase, certain real property commonly known as 1600 Mill Quarter Rd., Powhatan, VA 23139 (the "Real Property").  The Real Property serves as the Debtor's primary residence.  After execution of the Contract, a dispute arose between the Parties.  Beginning in early March 2022, the Debtor "had a change of heart" and decided he did not "want to sell."[4]  Debtor's Ex. 4 at KLM/RFP/RSP0072-RSP0073; Debtor's Ex. 71 at ES/RFP/RSP0171-RSP0172, ES/RFP/RSP0177-RSP0179; Oct. 23, 2024 Hr'g Tr. 141:6-142:7; 146:19-21.  However, the Creditors would not agree to terminate the Contract.  Debtor's Ex. 71 at ES/RFP/RSP0171-RSP0172, ES/RFP/RSP0177-RSP0179; Oct. 23,

---

fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

As the Debtor acknowledged during the Confirmation Hearing, orders denying confirmation are interlocutory orders that may not be appealed without leave of Court. *Bullard v. Blue Hills Bank*, 575 U.S. 496, 504-05 (2015) ("The knowledge that he will have no guaranteed appeal from a denial should encourage the debtor to work with creditors and the trustee to develop a confirmable plan as promptly as possible."); Confirmation Hr'g Tr. 12:24-25, ECF No. 448 at 12 ("Now, I understand that the denial of a plan confirmation is not appealable in and of itself . . . .").  The Court issues this Memorandum Opinion to assist the Debtor in formulating an amended plan that is able to be confirmed.

[4]  It is unclear from the evidence provided by the Debtor if he wanted to terminate the Contract because he did not want to move, see Debtor's Ex. 71 at ES/RFP/RSP0178 ("It took this experience for me to realize that I don't want to leave.  I'm just finally getting comfortable here.  I don't want to move.  So I made a mistake."), or for another reason, *see* Debtor's Ex. 55 at ESKW0264-ESKW0266 (relisting the Real Property for sale by owner for between $1,200,000 and $1,550,000 in May 2022, a difference of $270,000 to $620,000 from the price agreed upon in the Contract).

2024 Hr'g Tr. 146:21-23; 147:11-20. Without the Creditors' agreement, the Debtor began assessing ways to terminate the Contract unilaterally. *See* Debtor's Ex. 4 at KLM/RFP/RSP0078-0079 ("I told you before, if they [the Creditors] make a misstep we are cancelling the contract.").

Ultimately, the Creditors requested certain concessions from the Debtor based on their inspections of the Real Property. The Debtor refused to respond to the repair requests and instructed his agent to do the same:

> I am telling you what the contract says. If you think it says something different, send me the language in the contract.
>
> The buyer can either (i) terminate the purchase agreement or (ii) accept Seller's last offer regarding the repair request. I have remained silent and have not made an offer regarding the repair request; therefore, option (ii) is not available to the Buyer. After the Negotiation Period, the Buyer can only elect to terminate. If the Buyer does not terminate the contract by 5:00pm on Monday, the contract will automatically terminate.

Debtor's Ex. 4 at KLM/RFP/RSP0088. After refusing to respond to the repair request, the Debtor, by his counsel at the time, purported to give notice that the Contract "terminated" by its own terms. Debtor's Ex. 64 at ES/RFP/RSP0057.

On or about March 25, 2022, the Creditors sued the Debtor in Powhatan County Circuit Court (the "State Court") for specific performance of the Contract, damages, declaratory relief, and injunctive relief, thereby commencing the "State Court Litigation." As part of the State Court Litigation, the Debtor filed a plea in bar, alleging that the Creditors had rejected the Contract by tendering the repair request and that the Contract had otherwise terminated due to the Debtor's silence regarding the repair request. Debtor's Ex. 110 at KLM0314-KLM0316. The State Court issued a letter ruling dated January 18, 2023, which found, among other things, that the Creditors could properly withdraw their repair request and proceed to closing on the Real Property in an "as

3

is" condition, thereby rejecting the Debtor's argument that the Contract had terminated on its own terms. Creditors' Ex. W ⁋ 3, ECF No. 332-1 at 2.

The State Court Litigation was scheduled for trial on October 6, 2023. The day before the trial was set to begin in State Court, the Debtor filed this Bankruptcy Case. By operation of section 362 of the Bankruptcy Code, the State Court Litigation was stayed automatically. *See* 11 U.S.C. § 362(a) (the "Automatic Stay"). The Debtor subsequently filed a *Notice of Removal*, thereby removing the State Court Litigation to this Court and commencing Adversary Proceeding No. 23-03043-KRH (the "Adversary Proceeding"). *See* Fed. R. Bankr. P. 9027(a)(2). The Creditors moved to remand the State Court Litigation back to the State Court.

This Court had no subject matter jurisdiction over the State Court Litigation other than "relating to" jurisdiction under 28 U.S.C. § 1334. Consistent therewith, the Court determined that mandatory abstention required this Court to remand the matter. *See* 28 U.S.C. § 1334(c)(2); *Seven Springs v. Abramson* (*In re Seven Springs, Inc.*), 148 B.R. 815, 817 (Bankr. E.D. Va. 1992). By *Order Granting Motion for Expedited Hearing and Motion to Remand* entered December 20, 2023 (the "Remand Order"), in the Adversary Proceeding, the Court granted the Creditors' motion and remanded the State Court Litigation back to the State Court. The remand was effective upon issuance of the Remand Order.[5] *In re Lowe*, 102 F.3d 731, 735 (1996). Although the Debtor appealed the Remand Order and sought a stay pending appeal, he did not obtain a stay pending

---

[5] The Debtor argued at the Confirmation Hearing that the Remand Order was not effective, alleging that a certified copy of the Remand Order was not provided to the State Court as required by *Bryan v. BellSouth Commc'ns, Inc.*, 492 F.3d 231 (4th Cir. 2007). This Court's order expressly required the Clerk of this Court to send a copy of the Remand Order to the State Court and the Debtor failed to provide any evidence that the State Court did not receive a certified copy of the Remand Order. Setting aside the fact that the Debtor's argument lacked any evidentiary support, *BellSouth* does not stand for the proposition advanced by the Debtor. Rather, *BellSouth* confirms that the remand was effectuated upon entry of the Remand Order: "A remand is effective when the district court mails a certified copy, or, *if the remand is based on the lack of subject-matter jurisdiction* or a defect in the removal process, *when the remand order is entered*." *Id.* at 235 n.1 (internal citations omitted) (emphasis added).

appeal. *Schelin v. Malloy*, No. 24-1451, 2024 WL 3580107, 2024 U.S. App. LEXIS 18817 (4th Cir. July 30, 2024) (dismissing the Debtor's appeal of the decision denying his motion to stay pending appeal).

To effectuate the Remand Order, this Court also granted limited relief from the Automatic Stay to permit the Creditors to continue the State Court Litigation to a final judgment. The Court did not modify the Automatic Stay to permit the enforcement of any judgment obtained in the State Court Litigation. As this Court previously noted, "[t]he Remand Order effectively permit[ted] the [Creditors] to liquidate their claim(s) in the State Court Litigation. If the [Creditors] receive[d] a judgment in their favor, the Remand Order requires the [Creditors] to return to this Court to seek further relief from the automatic stay before execution of any such judgment." *Schelin v. Malloy* (*In re Malloy*), Adv. Pro. No. 23-03043-KRH, 2024 WL 169172, at *1 n.2, 2024 Bankr. LEXIS 56, at *2 n.2 (Bankr. E.D. Va. Jan. 12, 2024). The Debtor would thereby be afforded the opportunity to satisfy any judgment that might be rendered against him in the State Court through a confirmable Chapter 13 plan.

In accordance with this Court's instructions in the Remand Order, in May 2024, the State Court conducted a trial on the merits to liquidate the Creditors' claim for the Debtor's breach of the Contract. On October 20, 2024, the State Court entered *Final Judgment* (the "Final Judgment"). Creditors' Ex. W, ECF No. 332-1. First, the State Court entered judgment in favor of the Creditors for the remedy of specific performance. The Final Judgment requires the Debtor to perform the Contract and sell the Real Property to the Creditors for the contract price of $930,000. Additionally, the State Court awarded monetary damages caused by the Debtor's

5

breach of the Contract in the total amount of $395,177.46.  This Court adopts the findings of fact made by the State Court.[6]

The findings made by the State Court were a necessary predicate for this Court to be able to resolve the Objections and determine whether the Plan proposed by the Debtor was facially confirmable.  The Plan provides for a 60-month duration and is funded by equal monthly installments of $6,584 for total Plan funding of $395,040.  The Plan proposes to use that funding to pay (i) the trustee's commission, (ii) the attorneys' fees ultimately allowed to Debtor's former counsel,[7] (iii) a claim secured by a vehicle, and (iv) payment of all general unsecured claims.[8]  The Plan acknowledges that unsecured creditors would receive a 100 percent distribution in a Chapter 7 case and purports to project a 100 percent payoff to unsecured creditors.  *See* 11 U.S.C. § 1325(a)(4).[9]  The Plan further provides for the rejection of the Contract in accordance with 11 U.S.C. § 1322(b)(7).

---

[6] "The Rooker-Feldman doctrine prohibits lower federal courts from sitting in review of state court decisions. Further, it extends to bar the federal courts from entertaining claims that are 'inextricably intertwined' with a state court judgment. The doctrine also extends to bar a lower federal court from reviewing decisions of the lower courts of a state." *In re Meredith*, 337 B.R. 574, 578 n.5 (Bankr. E.D. Va. 2005) (citations omitted); *see also In re Meridien Energy, LLC*, No. 23-31377-KLP, 2024 Bankr. LEXIS 1205, at *8 (Bankr. E.D. Va. May 23, 2024) ("In essence, the doctrine generally precludes a federal court from interfering with ongoing state-court litigation."). This Court defers to the findings of the State Court, which effectively liquidated the Creditors' claim in accordance with this Court's Remand Order.

[7] On March 1, 2024, the Court entered a *Memorandum Opinion and Order Approving Fee Application of Kane & Papa, P.C.* [ECF No. 125] (the "Order Approving Attorneys' Fees").  While the Debtor noticed an appeal of the Order Approving Attorneys 'Fees, he did not seek a stay of that order.  For purposes of the Confirmation Hearing only, the Court estimates that claim to be $1574 in accordance with section 502(c) of the Bankruptcy Code.

[8] The deadline for pre-Petition Date creditors to file proofs of claim under 11 U.S.C. § 502 in this Bankruptcy Case has now expired.  Fed. R. Bankr. P. 3002(c).  Only two pre-Petition Date claims were filed.  On December 14, 2023, the Creditors timely filed a proof of their unliquidated and disputed claim, Claim No. 2-1.  The other pre-Petition Date claim was filed by the creditor whose claim is secured by the vehicle being paid through the plan.  The trustee's commission and the attorneys' fees are administrative expenses arising under 11 U.S.C § 503 for which no proof of claim need be filed.

Although the Plan purports to address certain priority tax debt, no such claims were filed in this Bankruptcy Case.  In the absence of a proof of claim, the Chapter 13 Trustee will not make any distributions on account of such alleged debts.

[9] The best interest test set forth in section 1323(a)(4) of the Bankruptcy Code requires that the plan must propose

In order to evaluate whether the Plan was facially confirmable, the Court needed to resolve two preliminary issues: the first issue was whether the Contract was executory; the second issue was an estimation of the amount of the Creditors' claim pursuant to section 502(c) of the Bankruptcy Code solely for the purposes of consideration of confirmation of the Plan. Scheduling Order ¶ 1, ECF No. 206 at 1.

Section 1322(b)(7) of the Bankruptcy Code permits a debtor to assume or reject any executory contract subject to section 365 of the Bankruptcy Code. As the Plan calls for the rejection of the Contract, it is facially confirmable only if the Contract is capable of rejection under section 365 of the Bankruptcy Code. Only executory contracts may be assumed or rejected. *See Gloria Mfg. Corp. v. Int'l Ladies' Garment Workers' Union*, 734 F.2d 1020, 1022 (4th Cir. 1984) ("A contract may be rejected only if it was executory."). As such, whether the Debtor may reject his Contract with the Creditors turns on whether the Contract is executory. The Debtor, as the party seeking rejection, has the burden of proving the Contract is executory. *In re Phila. Newspapers, LLC*, 424 B.R. 178, 181 (Bankr. E.D. Pa. 2010). "Whether a contract is executory is determined at the time of assumption or rejection that, in this case, is the date of confirmation." *Kaye v. A.R.E. Distribution & Alpine Records, LLC (In re Value Music Concepts, Inc.)*, 329 B.R. 111, 123 (Bankr. N.D. Ga. 2005) (citing *Gloria Mfg. Corp.,* 734 F.2d at 1022).[10] Thus, the Court must determine whether the Contract was executory at the time of the Confirmation Hearing.

---

disbursements to unsecured creditors that are not less than what the unsecured creditors would receive if that case had been filed under Chapter 7 of the Bankruptcy Code.

[10] The Debtor argued, without any legal support, that the timing for the Court's determination whether the contract was executory should be as of the Petition Date – regardless of post-Petition Date developments. In *Gloria Manufacturing*, the Fourth Circuit specifically rejected the relation-back doctrine argued by the Debtor. 734 F.2d at 1022

At the time of the Confirmation Hearing, the State Court pursuant to this Court's Remand Order had entered its Final Judgment, which, among other things, ordered specific performance of the Contract.  As Judge Mitchell of this Court previously noted, "[m]any courts have held that once a court decrees specific performance of a contract, the contract is no longer executory and cannot be rejected.  A line of cases holds that once a court has decreed specific performance, a contract for the sale of real estate is no longer executory." *In re Giordano*, 446 B.R. 744, 749 (Bankr. E.D. Va. 2010) (first citing *In re Sundial Asphalt Co.*, 147 B.R. 72, 80 (E.D.N.Y. 1992); then citing *In re Roxse Homes, Inc.*, 74 B.R. 810, 816 (Bankr. D. Mass. 1987)).  Judge Mitchell not only adopted this reasoning in *Giordano*, but he also expanded the principle to apply to any contract that results in an award of specific performance.  *Id*.  The Court sees no reason to depart from this long-standing precedent in the case at bar.  *See also In re Bennett Enters.*, 628 B.R. 481, 488 (Bankr. D.N.J. 2021) (collecting cases).

> [O]nce specific performance is decreed, the rights and obligations of the parties become defined and governed by the decree rather than by the contract.  The debtor, thus, only has the non-material, or "ministerial," obligation of delivering title under the decree.  If the debtor refuses to comply with the decree, applicable state law typically provides mechanisms for the court or a court-appointed third party to act in the debtor's stead to co[n]vey title.  In other words, a failure to act is no longer breach of contract, it is a violation of a court order.

*Watson v. Confer* (*In re Confer*), No. EC-21-1140-TBG, 2022 WL 737589, at *5, 2022 Bankr. LEXIS 631, at *13-14 (B.A.P. 9th Cir. Mar. 10, 2022).  As of the Confirmation Hearing, the State Court had ordered specific performance.  The Contract is no longer executory.  It has been merged into the Final Judgment.  Because the Contract is not executory, the Debtor may not reject the Contract as a matter of law.

8

The second issue concerned an estimation of the Creditors' claim against the Debtor. The proof of claim filed by the Creditors was unliquidated. *See* note 8 *supra*. Section 502(c) of the Bankruptcy Code permits the Court to "estimate[ ] . . . any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1).

The Bankruptcy Code defines the term "claim" in two ways. A "claim" may be a "right to payment." *Id.* § 101(5)(A). Alternatively, a "claim" may be a "right to an equitable remedy for breach of performance," but only "if such breach gives rise to a right to payment." *Id.* § 101(5)(B). Specific performance is an equitable remedy. By awarding specific performance, the State Court necessarily found that the Creditors do not have an adequate remedy at law for enforcement of the Contract. *Hale v. Wilkinson*, 62 Va. 75, 80 (1871) ("[L]and always has, in the eye of the law, a peculiar value, and a contract for the sale and purchase of it, if unobjectionable, will therefore be specifically executed. In no other way can the parties receive the full benefit of their contract."). With regard to this aspect of the Final Judgment, there is no longer any "claim" to estimate. *See* 11 U.S.C. § 101(B).

The State Court also awarded the Creditors $395,177.46 on account of the damages they incurred on account of the Debtor's breach of the Contract.[11] This monetary award is a claim as such term is defined by the Bankruptcy Code. The Court adopts the findings of the State Court and estimates the Creditors' claim to be $395,177.46 solely for the purposes of consideration of confirmation of the Plan.[12]

---

[11] As to the Creditors' claim for breach of contract damages, the State Court awarded $357,819.19 in attorney's fees, $1,920 in expert witness costs, and $35,438.27 in insurance proceeds for damage to the roof of the Real Property.

[12] While the Court does not stand in review of the Final Judgment for the reasons stated in footnote 6, *supra*, additional adjustments will likely need to be made to the claim to account for additional fees and expenses

Having decided these two preliminary issues, the Court finds that the Plan is facially unconfirmable. First, the Plan calls for the rejection of the Contract – but the Contract is not executory and, therefore, is not capable of rejection. Second, in light of the Court's estimation of the Creditor's Claim, the Plan is underfunded. The Plan funding of $395,040 will not be sufficient to pay the Creditors' estimated claim of $395,177.46 plus the other distributions contemplated by the Plan. For these reasons, confirmation of the Plan must be denied, without prejudice to the Debtor to propose an amended plan that will allow him to satisfy the State Court Judgment. A separate Order shall issue.

Dated:  November 4, 2024  /s/ Kevin R. Huennekens
UNITED STATES BANKRUPTCY JUDGE

Entered on Docket:  November 4, 2024

**Copies to:**

**Karl Linard Malloy**
1600 Mill Quarter Road
Powhatan, VA 23139

**Carl M. Bates**
P. O. Box 1819
Richmond, VA 23218

**Christopher L. Perkins**
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, VA 23219

**E. Duffy Myrtetus**
Eckert Seamans Cherin & Mellott, LLC
919 East Main Street, Suite 1300
Richmond, VA 23219

---

incurred by the Creditors.