**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**KARL LINARD MALLOY,**

**Appellant,**

**v.** **Civil Action No. 3:25cv417**

**KRISTIN E. SCHELIN, *et al.*,**

**Appellees.**

**MEMORANDUM OPINION**

This matter comes before the Court on *pro se*[1] Appellant Karl Linard Malloy's appeal from the United States Bankruptcy Court for the Eastern District of Virginia's (the "Bankruptcy Court")[2] order denying Mr. Malloy's third proposed Chapter 13 plan and converting Mr. Malloy's Bankruptcy Case ("the Bankruptcy Case") from one under Chapter 13 of Title 11 of the United States Code to one under Chapter 7 of Title 11 of the United States Code (the "Conversion Order"). (ECF No. 1-1.)[3]

---

[1] Mr. Malloy is an attorney licensed to practice law in the State of New York, the State of Maryland, and the District of Columbia, but he is not a member of the Virginia State Bar. *See In re Karl Linard Malloy*, Case No. 23-33442-KRH, ECF No. 426, at 5 n.4 (Bankr. E.D. Va. Oct. 28, 2024). For the purposes of this appeal, the Court will consider Mr. Malloy a *pro se* litigant.

[2] The instant matter is one of 42 appeals Mr. Malloy has filed with this Court. *See* 3:24-cv-02, 3:24-cv-59, 3:24-cv-170, 3:24-cv-727, 3:24-cv-728, 3:24-cv-729, 3:24-cv-778, 3:24-cv-779, 3:24-cv-785, 3:42-cv-786, 3:24-cv-788, 3:24-cv-790, 3:24-cv-791, 3:24-cv-792, 3:24-cv-793, 3:24-cv-794, 3:24-cv-795, 3:24-cv-796, 3:24-cv-797, 3:24-cv-828, 3:24-cv-832, 3:24-cv-891, 3:25-cv-21, 3:25-cv-104, 3:25-cv-300, 3:25-cv-416, 3:25-cv-417, 3:25-cv-525, 3:25-cv-534, 3:25-cv-760, 3:25-cv-780, 3:25-cv-781, 3:25-cv-834, 3:25-cv-866, 3:26-cv-21, 3:26-cv-22, 3:26-cv-82, 3:26-cv-8; 3:26-cv-751; 3:26-cv-761; 3:26-cv-762; 3:26-cv-848. The Court has ruled on 29 of these appeals, including the instant appeal.

[3] This Court employs the pagination assigned by the CM/ECF docketing system. Given the onslaught of paperwork submitted in support of these nearly entirely frivolous appeals, the

Mr. Malloy filed an appeal brief, (ECF No. 11), as did Appellees Kristen E. Schelin and Mark A. Watson (collectively, "Appellees"), (ECF No. 13). Mr. Malloy replied. (ECF No. 16.)

The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. Accordingly, the matter is ripe for disposition. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[4] For the reasons articulated below, the Court will affirm the Bankruptcy Court's Conversion Order and dismiss Mr. Malloy's appeal.

## I. Background

### A. Factual Background

#### 1. The Property Dispute and Resulting State Court Litigation

Appellees and Mr. Malloy entered into a Central Virginia Multiple Listing Services Purchase Agreement dated February 25, 2022, and ratified February 26, 2022 (the "Agreement"). (Ad. Pro. ECF No. 1, at 2.) In the Agreement, Mr. Malloy agreed to convey, and Appellees agreed to purchase, certain real property located in Powhatan County, Virginia (the "Property"). (Ad. Pro. ECF No. 1, at 2.) After the parties executed the Agreement, a dispute arose between

---

Court cites primarily to its own record, "(ECF No. X)," but supplements the record with citations to documents on the underlying Bankruptcy Court docket, Case No. 23-33442-KRH (Bankr. E.D. Va.), "(Bankr. ECF No. X)," and citations to a related adversary bankruptcy proceeding, *Schelin v. Malloy*, No. 23-03043-KRH (Bankr. E.D. Va.), "(Ad. Pro. ECF No. X)".

[4] 28 U.S.C. § 158(a)(1) provides that "(a) The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees." *Id.*

The parties correctly argue that the Conversion Order is a "final judgment, order, [or] decree[]" over which the Court has jurisdiction. (ECF No. 11, at 3; ECF No. 13, at 4; ECF No. 15, at 1–2; ECF No. 17, at 3–4); *Goddard v. Burnett*, 173 F.4th 550, 556 (4th Cir. 2026) (considering on the merits an order denying a Chapter 13 debtor's proposed plan); *see Askri v. Fitzgerald*, 612 B.R. 500, 503 (E.D. Va. 2020) (reviewing appeal of conversion order from Chapter 11 to Chapter 7 and explaining that "[t]he Conversion Order is a final order that Debtor has appealed as of right") (citations omitted).

Appellees and Mr. Malloy. On March 25, 2022, Appellees sued Mr. Malloy in Powhatan County Circuit Court for specific performance of the Agreement, damages, declaratory relief, and injunctive relief, thereby commencing the State Court Litigation. (Ad. Pro. ECF No. 1, at 1.)

On October 5, 2023, the day before trial in the State Court Litigation was scheduled to begin, Mr. Malloy filed a voluntary petition under Chapter 13, thereby initiating the Bankruptcy Case and staying the State Court Litigation by operation of 11 U.S.C. § 362.[5] (Bankr. ECF No. 1.) On November 8, 2023, Appellees filed a Motion to Dismiss the Bankruptcy Case seeking dismissal of the matter or relief from the automatic stay to pursue the State Court Litigation. (Bankr. ECF No. 24, at 2.)

On November 11, 2023, Mr. Malloy removed the State Court Litigation to the Bankruptcy Court. (Ad. Pro. ECF No. 1.) On December 8, 2023, Appellees moved to remand the State Court Litigation. (Ad. Pro. ECF No. 8.) On December 20, 2023, the Bankruptcy Court granted Appellees' request to remand and remanded the State Court Litigation back to the Circuit Court for the County of Powhatan. (Ad. Pro. ECF No. 16.)

On October 20, 2024, the Circuit Court for the County of Powhatan entered Final Judgment in the State Court Litigation (the "Final Judgment") in favor of Appellees and awarded declaratory and injunctive relief, compensatory damages, and specific performance requiring Mr. Malloy to comply with the terms of the Agreement. (Bankr. ECF No. 332-1.) In relevant part, the Final Judgment ordered Mr. Malloy

> to specifically perform and comply with all of his obligations pursuant to the terms of the Contract, except as specifically ordered herein, in connection with the Settlement, and . . . to promptly proceed to closing and Settlement of the Contract for the sale and purchase of the Property for a Sales Price of Nine Hundred and

---

[5] When a debtor files a bankruptcy petition, the Bankruptcy Code provides for an automatic stay of all judicial actions against the debtor. *Herlihy v. DBMP, LLC*, 167 F.4th 142, 149 (4th Cir. 2026); *see* 11 U.S.C. § 362(a)(1).

> Thirty Thousand Dollars ($930,000.00), subject to the prorations, credits and adjustments at Settlement per the terms of the Contract and this Final Judgment, including without limitation [Mr. Malloy's] conveyance of title to the Property to [Appellees] in conformity with the requirements of the Contract by general warranty deed with English covenants of title in form and upon terms reasonably acceptable to [Appellees] and their legal counsel as required in Standard Provision B of the Contract. *[Mr. Malloy] shall have no right to terminate the Contract, and shall specifically perform all obligations, conditions, and requirements of [Mr. Malloy] to promptly transfer good, clear, marketable and insurable title to the Property [Appellees] pursuant to the [Agreement].*

(Bankr. ECF No. 332-1, at 3 (emphasis added).)

On November 19, 2024, Mr. Malloy appealed the Final Judgment to the Court of Appeals of Virginia. *See Malloy v. Schelin*, No. 191124 (Va. Ct. App. 2024). The Court of Appeals of Virginia stayed Mr. Malloy's appeal pending disposition of the Bankruptcy Case. *See Malloy v. Schelin*, No. 191124 (Va. Ct. App. 2024).[6]

### 2. The Bankruptcy Court Rejects Mr. Malloy's First and Second Proposed Chapter 13 Plans

On November 4, 2024, the Bankruptcy Court adopted the findings of fact in the Final Judgment. (Bankr. ECF No. 481, at 6.) Based on those factual findings, the Bankruptcy Court found that the Agreement merged into the Final Judgment, meaning that the Agreement was no longer executory and could not be rejected under 11 U.S.C. § 365. (Bankr. ECF No. 481, at 8.) Because Mr. Malloy's initial Chapter 13 plan (the "First Plan") provided for rejection of the Agreement, (*see* Bankr. ECF No. 20), the Bankruptcy Court determined that Mr. Malloy's First

---

[6] A "district court is limited to considering only that evidence presented to the bankruptcy court and made a part of the record." *Hamlett v. Ocwen Fed. Bank, FSB*, 286 B.R. 835, 837 (W.D. Va. 2002), *aff'd sub nom. In re Hamlett*, 47 F. App'x 672 (4th Cir. 2002) (citation omitted). The record before the Court, including the Conversion Order, discusses and relies upon Mr. Malloy's pending state appeal of the Final Judgment. (*See* ECF No. 1-1, at 9.) For clarity, the Court takes judicial notice of Mr. Malloy's pending state appeal, including the case number and posture. The Court does not base its review of the appeal beyond the extent that the Bankruptcy Court did.

Plan was facially unconfirmable but permitted Mr. Malloy to "propose an amended plan that [would] allow him to satisfy the State Court Judgment." (Bankr. ECF No. 481, at 10.)

More than two months later, on January 13, 2025, Mr. Malloy filed an amended Chapter 13 plan (the "Second Plan"). (Bankr. ECF No. 632.) Because the Second Plan also contemplated that Mr. Malloy could retain the Property, the Bankruptcy Court found that the Second Plan was facially unconfirmable. (Bankr. ECF No. 723, at 1.) The Bankruptcy Court again permitted Mr. Malloy to file a proposed plan in compliance with the Final Judgment. (Bankr. ECF No. 723, at 1.)

### 3. **Mr. Malloy's Third Plan**

Again, after more than two months had passed, on April 4, 2025, Mr. Malloy filed a second amended Chapter 13 plan (the "Third Plan"). (Bankr. ECF No. 736.) The Third Plan included the following nonstandard plan provision:

> Regarding [Mr. Malloy's] principal residence . . . the "Property," and the proof of claim of [Appellees], [Mr. Malloy] will follow the Bankruptcy Court's Order, entered April 1, 2025[7] in this case[, which required Mr. Malloy to comply with the terms of the Final Judgment] . . . until such time as a stay pending appeal is issued after any appeal of the Order or the Order is reversed on appeal or the Final Judgment entered in Powhatan County Circuit Court is deemed null or void or unenforceable by a court of competent jurisdiction. *Any sale of the Property shall be on an as-is basis, in current condition, with no guarantees or warranties from [Mr. Malloy] or [Mr. Malloy's] Estate. Any buyer of the Property cannot seek legal recourse against [Mr. Malloy] or [Mr. Malloy's] Estate for any defects or issues regarding the Property.*

(Bankr. ECF No. 736, at 7 (emphasis added).)

---

[7] On April 1, 2025, between Mr. Malloy's filing of his Second and Third Plans, the Bankruptcy Court granted Appellees' motion to modify the automatic stay for a period of 120 days to permit Appellees to "enforce the Final Judgment." (Bankr. ECF No. 733, at 2.) The order lifting the stay required Mr. Malloy "to cooperate in all respects with [Appellees] in connection with their enforcement of the Final Judgment and his obligations pursuant to the Final Judgment." (Bankr. ECF No. 733, at 2.)

Case 3:25-cv-00417-MHL Document 27 Filed 09/01/26 Page 6 of 20 PageID# 9234

Appellees and the Chapter 13 Trustee objected to the Third Plan. (Bankr. ECF Nos. 742, 743.) In his objection, the Chapter 13 Trustee stated that the non-standard provision in Paragraph 12 of the Third Plan was

> ambiguous as to whether [Mr. Malloy] w[ould] or c[ould] comply with the Bankruptcy Court's Order entered on April 1, 2025, Ordering the debtor to cooperate in all respects in connection with the enforcement of the State Court Final Judgement, specifically as it relates to the specific performance provisions of the Final Judgement.

(Bankr. ECF No. 742, at 1.) The Chapter 13 Trustee "suggest[ed] that if [Mr. Malloy] [was] unwilling or unable to comply with the specific performance provisions of the Final Judgement then this [chapter 13] case should be either dismissed or converted to a case under chapter 7, whichever is in the best interests of creditors and the estate." (ECF No. 742, at 1.)

Appellees likewise objected to the non-standard term in Paragraph 12, explaining that its terms contradicted those in the parties' Agreement and the Final Judgment. (Bankr. ECF No. 743, at 2–4.) Appellees also specifically explained that they had been unable to secure title insurance due to Mr. Malloy's pending state appeal, meaning that Mr. Malloy's state appeal prevented Mr. Malloy from conveying to Appellees "insurable title" as required by the Agreement. (Bankr. ECF No. 743, at 3–4; *see also* Bankr. ECF No. 743-1 (Commitment for Title Insurance).)[8] Appellees requested that the Bankruptcy Court find that Mr. Malloy

---

[8] Appellees attached to their objection a Commitment for Title Insurance, which included eighteen requirements before the insurance could be issued, including:

> Receipt of a Final, Non-Appealable Court Order entered in connection with the final judgment dated October 20, 2024 entered in Case No: CL22-242 in the Powhatan Circuit Court and/or dismissal of the pending appeal in the Court of Appeals of Virginia as Record No. 1911-24-2 with prejudice, and expiration of all stays, rights of appeal, and rights of rehearing.

(Bankr. ECF No. 743-1, at 2–4.)

proceeded in bad faith, deny confirmation of the Third Plan, and convert the case to one under Chapter 7. (Bankr. ECF No. 743, at 4.)

On May 15, 2025, the Bankruptcy Court held a hearing (the "Hearing") on Mr. Malloy's Third Plan. (ECF No. 10.) During the Hearing, Mr. Malloy asked the Bankruptcy Court to either confirm his Third Plan "as filed or with clarifying language" or dismiss the Bankruptcy Case. (ECF No. 10, at 9:11–16.) Mr. Malloy argued that the Court should deny Appellees' and the Chapter 13 Trustee's recommendation to convert the case to Chapter 7. (ECF No. 10, at 9:15–16.)

Counsel for Appellees argued that, in light of Mr. Malloy's bad faith during the pendency of the Bankruptcy Case, conversion to Chapter 7 was necessary and appropriate. Counsel explained that since entering into the Agreement with Appellees in February 2022, Mr. Malloy had "attempt[ed] to avoid his obligations under that" Agreement in various ways, including by "dragging" Appellees into the Bankruptcy Court "on the literal eve" of trial in the State Court Litigation. (ECF No. 10, at 22:16–25.) Appellees also reiterated arguments raised in their written objection, including that the language in Paragraph 12 directly contradicted various terms in the Agreement, and that Mr. Malloy's pending state appeal prevented him from conveying insurable title. (ECF No. 10, at 26:9–30:25.)

The Chapter 13 Trustee similarly said at the Hearing that he "just [didn't] think confirmation" of a Chapter 13 plan was "an option" because Mr. Malloy's pending state appeal meant that Mr. Malloy would be unable to convey insurable title. (ECF No. 10, at 31:11–21, 32:15–19.) Indeed, in response to questioning by Mr. Malloy, the Chapter 13 Trustee stated that there was "[n]othing" he could do "within the confines of Chapter 13" to effectuate the Final

Judgment and that the fastest way for the Chapter 13 trustee to facilitate the sale of the Property to Appellees would be to "[c]onvert the case." (ECF No. 10, at 38:11–25.)

At the conclusion of the Hearing, the Bankruptcy Court took Mr. Malloy's Third Plan under advisement. (ECF No. 10, at 96:24–25.) On May 20, 2025, the Bankruptcy Court issued the Conversion Order. (ECF No. 1-1, at 5–11.)

#### 4. The Bankruptcy Court Enters the Conversion Order, Rejecting Mr. Malloy's Third Proposed Chapter 13 Plan and Converting the Case to Chapter 7

In the Conversion Order, the Bankruptcy Court rejected as facially unconfirmable Mr. Malloy's Third Plan and converted Mr. Malloy's Bankruptcy Case from one under Chapter 13 to one under Chapter 7.[9] (ECF No. 1-1, at 5–11.)

In rejecting Mr. Malloy's Third Plan, the Bankruptcy Court noted that, unlike the First and Second Plans, the Third Plan "no longer attempted to reject the [Agreement] or to permit [Mr. Malloy] to retain the Property." (ECF No. 1-1, at 8.) However, the Bankruptcy Court explained that the non-standard provision in Paragraph 12 was "inherently contradictory to the orders entered by [the Bankruptcy Court] and the State Court and render[ed] the Third Plan facially unconfirmable." (ECF No. 1-1, at 9.) Specifically, the Bankruptcy Court noted that

> [t]he Final Judgment required [Mr. Malloy] to specifically perform the [Agreement], including (1) conveying the Real Property by general warranty deed with English covenants of title in form and upon terms reasonably acceptable to the Creditors; and (2) promptly transfer good, clear, marketable, and insurable title to the Real Property. The

---

[9] Chapters 13 and 7 serve different functions. Chapter 13, commonly called a wage earner's bankruptcy, "allows a debtor to retain his [or her] property if he [or she] proposes, and gains court confirmation of, a plan to repay his debts over a three-to-five-year period." *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015). In contrast, Chapter 7 provides for "prompt liquidation of the debtor's assets." *Id.* at 513. Under Chapter 7, a debtor's assets are "immediately transferred to a bankruptcy estate" controlled by a Chapter 7 trustee, who is charged with selling the property in the estate and distributing the proceeds to the debtor's creditors. *Id.*

> inclusion of language in paragraph 12 that the sale will be on as-is basis, in current condition, with no guarantees or warranties directly contradicts this language.

(ECF No. 1-1, at 9.)

The Bankruptcy Court also noted that Appellees had been "unable to obtain title insurance while [Mr. Malloy] continue[d] to appeal the Final Judgment," despite the Final Judgment requiring Mr. Malloy to "promptly transfer good, clear, marketable, and insurable title to the Real Property." (ECF No. 1-1, at 9.) The Bankruptcy Court added that it had "ordered [Mr. Malloy] to cooperate with the [Appellees in] their enforcement of the Judgment," and explained that Mr. Malloy's inclusion of the non-standard terms in "Paragraph 12 [was] not simply a failure to comply with the Final Judgment; it evince[d] willful refusal by [Mr. Malloy] to convey the Property in accordance with the terms of the [Agreement] and the Final Judgment." (ECF No. 1-1, at 9 (internal citations omitted).)

The Bankruptcy Court also found that Mr. Malloy acted in bad faith, not only in filing his Third Plan, but throughout the Bankruptcy Case. The Bankruptcy Court stated:

> The Court further finds that [Mr. Malloy] proposed the Third Plan in bad faith, as evidenced by his willful refusal to abide by orders of this Court. The Court also finds that [Mr. Malloy] filed this Bankruptcy Case in bad faith and has proceeded in bad faith in this Bankruptcy Case. Every action that [Mr. Malloy] has taken in this Bankruptcy Case, from filing the petition to date, has been an attempt to evade his obligations under the [Agreement], devoid of any support in law or fact.

(ECF No. 1-1, at 9–10.)

Ultimately, the Bankruptcy Court concluded that "[c]onversion [would] stop the endless frivolous litigation and allow for enforcement of [the Bankruptcy Court's] Orders and the execution of the Final Judgment" because a "trustee appointed under Chapter 7 of Title 11

w[ould] be able to convey marketable title to the [Appellees] under 11 U.S.C. § 363(f),"[10] meaning that cause existed under 11 U.S.C. § 1307(c), and that conversion from Chapter 13 to Chapter 7 "would be in the best interest of [Mr. Malloy's] creditors and estate." (ECF No. 1-1, at 10.) The Bankruptcy Court thus denied Mr. Malloy's Third Plan and converted the Bankruptcy Case from one under Chapter 13 to one under Chapter 7.

### B. <u>Procedural Background</u>

On June 2, 2025, Mr. Malloy appealed to this Court the Bankruptcy Court's Conversion Order. (ECF No. 1, 1-1.) On September 2, 2025, Mr. Malloy filed his appeal brief. (ECF No. 11.) On October 30, 2025, Appellees filed their appeal brief. (ECF No. 13.) On November 13, 2025, Mr. Malloy replied. (ECF No. 16.) At the Court's direction, (ECF No. 14), both parties filed supplemental briefing on the Court's jurisdiction to hear the instant appeal. (ECF Nos. 15, 17.)

## II. Standard of Review

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526–27 (E.D. Va. 2010) (citing *Webb v. Reserve Life Ins. (In re Webb)*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The district court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *Stancill v. Harford Sands, Inc. (In re Harford Sands Inc.)*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has

---

[10] 11 U.S.C. § 363(f) sets forth the circumstances in which a trustee may sell property "free and clear of any interest in such property of an entity other than the estate." *Id.*

been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko)*, 515 F.3d 319, 324 (4th Cir. 2008) (quoting *United States Gypsum Co.*, 333 U.S. at 395). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574. In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

"Decisions committed to the discretion of the bankruptcy court are reviewed for abuse of discretion." *In re Mitrano*, 409 B.R. 812, 815 (E.D. Va. 2009). "A bankruptcy court abuses its discretion 'when it acts in an arbitrary manner, when it fails to consider judicially-recognized factors limiting its discretion, or when it relies on erroneous factual or legal premises.'" *Schultz v. Cheney*, No. 1:25-cv-322 (LMB), 2025 WL 2722657, at *5 (E.D. Va. Sept. 24, 2025) (quoting *United States v. Henry*, 673 F.3d 285, 291 (4th Cir. 2012)).

A court reviews for clear error a bankruptcy court's finding that a debtor proceeded in bad faith. *Goddard v. Burnett*, 173 F.4th 550, 560 (4th Cir. 2026). A court reviews for abuse of discretion the bankruptcy court's decisions to deny a request for dismissal of a Chapter 13 case under § 1307 and to convert a case from Chapter 13 to Chapter 7. *In re Mitrano*, 472 B.R. 706, 708 (E.D. Va. 2012) (quotation omitted); *see also Schultz*, 2025 WL 2722657, at *5 ("'A district court reviews a conversion decision for abuse of discretion.'") (quoting *In re Superior Siding & Window, Inc.*, 14 F.3d 240, 242 (4th Cir. 1994)).

## III. Analysis

Mr. Malloy argues that the Bankruptcy Court's Conversion Order should be reversed for three reasons: (1) the Bankruptcy Court's denial of Mr. Malloy's Third Plan without further leave to amend violates his statutory right under 11 U.S.C. § 1323[11] and the "recognition that Chapter 13 debtors generally must be afforded the opportunity to cure deficiencies"; (2) the Bankruptcy Court failed to make specific findings of "cause" for conversion as required under 11 U.S.C. § 1307(c); and, (3) even if "cause" existed under § 1307(c), conversion rather than dismissal was improper.[12] (ECF No. 11, at 11–12.) Appellees argue that the Bankruptcy Court appropriately found that Mr. Malloy acted in bad faith and that conversion to Chapter 7 would be

---

[11] 11 U.S.C. § 1323 provides, in relevant part:

> The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322 of this title.

11 U.S.C. § 1323(a).

[12] Mr. Malloy's appeal brief also includes a "Statement of the Issues" that identifies 19 "issues" before the Court. Many of the 19 "issues" are unrelated to the instant appeal rendering them frivolous. (*See e.g.*, ECF No. 11, at 5 (Issue 10: "Whether the conversion to Chapter 7 was procedurally and ethically improper due to the repeated appointment of conflicted fiduciaries . . . each of whom had longstanding ties to Creditors' counsel and other parties with adverse interests.").) Other enumerated issues are subsumed within Mr. Malloy's three main arguments. (*See, e.g.*, ECF No. 11, at 8 (Issue 8: "Whether the Bankruptcy Court erred in finding bad faith by [Mr. Malloy] in proposing his Third Amended Chapter 13 Plan, where the plan complied with prior court rulings, including the determination that the contract was not executory and that specific performance was required.").)

In considering the appeal, the Court addresses the three arguments Mr. Malloy raises with respect to the Conversion Order and disposes of the "issues" only as necessary to do so as part of its central inquiry. *See Malbon v. Penn. Millers Mut. Ins. Co.*, 636 F.2d 936, 939 n.8 (4th Cir. 1980) (explaining that it it is not "absolutely necessary" that a court specifically recite and discuss each argument advanced by the parties). While the "better practice" would be to address all of his arguments, *id.*, it would likely be impossible to address every issue Mr. Malloy raises in his prolix 42 appeals.

in Appellees' best interests. (ECF No. 13, at 8–9.) For the reasons articulated below, the Court will affirm the Conversion Order.

### A. <u>The Court Will Affirm the Conversion Order</u>

#### 1. <u>Legal Standard: Conversion from Chapter 13 to Chapter 7 Under 11 U.S.C. § 1307(c) Based on a Debtor's Bad Faith</u>

11 U.S.C. § 1307 provides that, with limited exceptions, which are not present here, "on request of a party in interest or the United States trustee," a court may "convert a case under [chapter 13] to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1307(c). In evaluating a request for conversion or dismissal under § 1307(c), courts begin by determining whether "cause" exists. Section "1307(c) does not define 'cause,' [but] it provides a non-exhaustive list of examples." *Sugar v. Burnett*, 130 F.4th 358, 373 (4th Cir. 2025); *see* 11 U.S.C. § 1307(c)(1)–(11). In addition to the examples in § 1307(c), "case law has further recognized that [cause] includes bad faith." *Sugar*, 130 F.4th at 373 (citing *In re Kestell*, 99 F.3d 146, 148 (4th Cir. 1996)); *see also In re Mitrano*, 472 B.R. at 709 ("Bad faith in filing a Chapter 13 petition qualifies as 'cause' under the statute.").

To determine whether bad faith exists under § 1307(c), a court must look to the "totality of the circumstances," *In re Mitrano*, 472 B.R. at 709, including a debtor's pre-petition conduct, *In re Brown*, 671 B.R. 461, 464–65 (Bankr. D. Md. 2025) (citing *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367 (2007)). Courts also consider a series of non-exhaustive factors, including:

> the nature of the debt; whether the debt would be non-dischargeable in a chapter 7 proceeding; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's

Case 3:25-cv-00417-MHL Document 27 Filed 09/01/26 Page 14 of 20 PageID# 9242

> treatment of creditors before and after the petition was filed; and whether the debtor has been forthcoming with the bankruptcy court and the creditors.

*In re Mitrano*, 472 B.R. at 710.

"Where cause has been established, the Court must then determine whether conversion or dismissal 'is in the best interest of creditors and the estate.'" *In re Brown*, 671 B.R. at 465 (quoting § 1307(c)). "The [Bankruptcy] Code does not define the phrase 'best interests of creditors and the estate,'" but courts have recognized that the parties "will be the best judge of their own best interests, and if all of the parties agree on one course of action, the court should accommodate their desire." *Id.* (quotation and citations omitted).[13]

### 2. The Court Will Affirm the Conversion Order Because the Bankruptcy Court Neither Erred in Finding that Mr. Malloy Acted in Bad faith Nor Abused its Discretion in Converting the Bankruptcy Case to Chapter 7

The Bankruptcy Court did not err in converting the Bankruptcy Case from one under Chapter 13 to one under Chapter 7. The record amply supports the Bankruptcy Court's finding that Mr. Malloy acted in bad faith, both in initiating the Bankruptcy Case in an effort to avoid his obligations under the Agreement, and throughout the Bankruptcy Case. Mr. Malloy signed the Agreement in 2022—over four years ago now, and over three years prior to the Hearing. Since that day, the record indicates that Mr. Malloy has attempted to avoid his obligations under the Agreement, including filing the Bankruptcy Case "on the literal eve" of trial in the State Court Litigation, and repeatedly refusing to comply with the Final Judgment's specific performance

[13] In their supplemental brief, Appellees rely on *Askri v. Fitzgerald*, 612 B.R. 500, 503 (E.D. Va. 2020), which, unlike here, involved a district court's review of a conversion order converting a bankruptcy case from Chapter 11 to Chapter 7. (ECF No. 17, at 4 (citing *Askri*, 612 at 502).) Nevertheless, the Court observes that courts reviewing a bankruptcy court's conversion from Chapter 11 to Chapter 7 appear to employ the same two-part test that governs conversion or dismissal in Chapter 13 cases. *Id.*; *see also* 11 U.S.C. § 1112(b) (governing for cause dismissal or conversion of a Chapter 11 case).

requirements. (ECF No. 10, at 22:16–25.) Indeed, Mr. Malloy proposed *three* Chapter 13 plans, all of which contradicted the terms of the Final Judgment, and two of which included a provision keeping the Property rather than conveying it to Appellees. (*See generally* Bankr. ECF Nos. 20, 723.) As the Bankruptcy Court noted in the Conversion Order, although the Third Plan did not refuse to convey the Property to Appellees, it nevertheless included several provisions in Paragraph 12 that contradicted the terms of the Final Judgment. (ECF No. 1-1, at 8–9.)

At bottom, Mr. Malloy's repeated efforts to evade his obligations under the Agreement, including his submission of *three* facially unconfirmable Chapter 13 plans, fully support the Bankruptcy Court's findings that Mr. Malloy acted in bad faith. *In re Brown*, 671 B.R. at 471 ("Given the Debtors' history of filing unconfirmable plans that do not adequately treat specific claims or satisfy the chapter 7 liquidation test . . . the Court finds that none of the Debtors' plans were proposed in good faith."); *In re Mitrano*, 472 B.R. at 711 (finding debtors engaged in bad faith where it was "absolutely clear that [the debtor] ha[d] no intention of paying his creditors" and instead "abused the bankruptcy system by using it as an 'alternative forum to litigate the claims'"); *Cody v. Micale*, No. 7:19-cv-00433, 2019 WL 5967962, at *3–4 (W.D. Va. Nov. 13, 2019) (finding that the bankruptcy court did not abuse its discretion in dismissing debtor's Chapter 13 case for bad faith where it was evident that the case was part of a "continued effort to thwart the City of Roanoke from exercising its rights in connection with [the debtor's] condemned and unoccupied property") (alterations and quotation omitted). Accordingly, the Court finds that the Bankruptcy Court did not clearly err in determining that Mr. Malloy acted in bad faith.[14]

---

[14] Mr. Malloy additionally contends that the Bankruptcy Court "failed to make" specific findings of cause in its Conversion Order. (ECF No. 11, at 14.) To the contrary, the Conversion Order expressly states that Mr. Malloy repeatedly filed multiple facially unconfirmable plans in

The Court next considers whether the Bankruptcy Court abused its discretion in determining that conversion was in the interests of Appellees and the estate. In the Conversion Order, the Bankruptcy Court explained that Mr. Malloy's pending state appeal prevented Mr. Malloy from conveying marketable and insurable title to Appellees, thereby rendering him unable to present a confirmable Chapter 13 plan, and that conversion would be in Appellees' best interests because provisions of the Bankruptcy Code would allow "[a] trustee appointed under Chapter 7 of Title 11 would be able to convey marketable title to [Appellees]." (ECF No. 1-1, at 10.) The record undoubtably supports the Bankruptcy Court's decision to convert the case to Chapter 7.

The Final Judgment requires Mr. Malloy to "promptly transfer [to Appellees] good, clear, *marketable and insurable title* to the Property." (Bankr. ECF No. 332-1, at 3 (emphasis added).) But as Appellees explained in their objection and through argument and testimony at the Hearing, Mr. Malloy's pending state appeal of the Final Judgment rendered him unable to convey marketable and insurable title, and thus unable to propose a facially confirmable Chapter 13 plan that complied with the terms of the Final Judgment.[15] (Bankr. ECF No. 743, at 3–4; *see*

violation of the Final Judgment and the Bankruptcy Court's orders, and that Mr. Malloy would be unable to file a confirmable plan while his state appeal was pending. (ECF No. 1-1.) For the reasons explained above, these findings adequately support the Bankruptcy Court's finding of bad faith. *See also Schultz*, 2025 WL 2722657, at *7 ("Although the bankruptcy court's explanation regarding its decision to convert the Chapter 11 petition was brief, bankruptcy courts need not give exhaustive reasons for decisions.").

[15] In his brief, Mr. Malloy asserts that evidence in the record demonstrates that "alternative insurance options were available" to Appellees such that Appellees' representations that they were unable to obtain title insurance might not be accurate. (ECF No. 11, at 16.) He offers no specific cite and the record does not support this contention. To the contrary, Appellee Schelin testified that she believed her attorneys contacted multiple title companies in an effort to obtain title commitment, but that they were unsuccessful. (ECF No. 10, at 60:20–61:2; *see also* ECF No. 10, at 87:12–23.) There is *no* evidence in the record indicating that any title company was willing to insure the title with the encumbrance from the State Court Litigation.

*also* ECF No. 10, at 31:17–21.) The Chapter 13 Trustee agreed that because of the pending state appeal, obtaining insurable title was just "not going to happen." He further testified that he "just [didn't] think confirmation" of a Chapter 13 plan was "an option," that there was "[n]othing" he could do "within the confines of Chapter 13" to effectuate the Final Judgment, and that the fastest way to facilitate the sale of the Property to Appellees would be to "[c]onvert the case." (ECF No. 10, at 31:11–21, 32:15–19, 38:11–25.) Because the record amply demonstrates that Mr. Malloy could not convey marketable or insurable title to Appellees without first dismissing his state appeal and therefore could not propose a confirmable Chapter 13 plan, conversion to Chapter 7 was well within the Bankruptcy Court's discretion to protect the interests of Appellees. The record amply supports conversion, and the Bankruptcy Court did not abuse its discretion[16] in converting the Bankruptcy Case.[17] *In re Brown*, 671 B.R. at 465.

---

[16] Even if the Court reviewed the Bankruptcy Court's decision to convert the case *de novo* rather than for abuse of discretion, the record amply supports the Bankruptcy Court's decision, and the Court would still affirm the Conversion Order.

[17] In his appeal brief, Mr. Malloy also contends that the Bankruptcy Court erred in converting the case to Chapter 7 while "pending motions remain unresolved, including [Mr. Malloy's] request for Chapter 13 dismissal in lieu of conversion to Chapter 7." (ECF No. 11, at 10.) Mr. Malloy does not include a citation to the motion to dismiss he contends the Bankruptcy Court failed to consider. A review of the Bankruptcy Court docket reveals that Mr. Malloy filed a voluntary motion to dismiss in February 2025, (Bankr. ECF No. 690), and that he withdrew the motion to dismiss less than two weeks later, (Bankr. ECF No. 704).

Mr. Malloy also argues, without citation to authority, that the Bankruptcy Court improperly applied 11 U.S.C. § 348(f)(1) in "rul[ing] that the property of the estate in the converted case consisted of property as of the conversion date." (ECF No. 11, at 19); *see also* 11 U.S.C. § 348(f)(1)(A) (defining what constitutes the "property of the estate" when a case is converted from Chapter 13 to another chapter of the Bankruptcy Code). The Court is not aware of any authority supporting Mr. Malloy's proposition.

Finally, the Court finds that the Bankruptcy Court did not abuse its discretion in converting the case without granting Mr. Malloy leave to amend his Third Plan.[18] The record clearly establishes that unless Mr. Malloy dismissed his state appeal (thereby eliminating the encumbrance on the property and enabling Appellees to secure title insurance consistent with the Final Judgment), Mr. Malloy would be wholly unable to propose a facially confirmable Chapter 13 plan. In light of this evidence, the Bankruptcy Court did not abuse its discretion in denying Mr. Malloy another opportunity to amend.

Moreover, contrary to Mr. Malloy's assertions, bankruptcy litigants are not afforded endless opportunities to amend their proposed plans. Courts within the Fourth Circuit have routinely found that where, as here, the Bankruptcy Court provides a debtor multiple opportunities to submit a confirmable plan, but he or she fails to do so, denial of a plan without leave to amend is appropriate. *Costley v. Herr*, No. 22-CV-3265-LKG, 2024 WL 1140679, at *5 (D. Md. Mar. 14, 2024) ("Given this, the record before the Court shows that Appellant has been afforded ample opportunity to propose a Chapter 13 Plan that would meet the requirements of Section 1325(a)(6). Nonetheless, Appellant has twice failed to do so. And so, the Bankruptcy Court appropriately denied confirmation of Appellant's Amended Plan without leave to further amend the proposal.") (internal citations omitted); *Akers v. Micale*, 609 B.R. 175, 183–84 (W.D. Va. 2019) (bankruptcy court did not abuse its discretion in denying leave to amend to allow

---

[18] Mr. Malloy does not expressly argue that the Bankruptcy Court erred in denying his Third Plan and only contends that doing so without granting leave to amend was an abuse of discretion. To the extent that Mr. Malloy argues that the Bankruptcy Court erred in denying confirmation of the Third Plan, the Court readily concludes that the record supports the Bankruptcy Court's denial of the Third Plan as facially unconfirmable and evincing bad faith. *See* 11 U.S.C. § 1325(a)(3) (setting forth the requirements for Chapter 13 plan confirmation and providing that "the plan has been proposed in good faith"); *Goddard*, 173 F.4th at 557 ("[A] bankruptcy court is *required* to find that the debtor has proposed the Chapter 13 plan in good faith before it may confirm it.").

debtor to file a fifth chapter 12 plan where the "Chapter 12 case had been pending for over a year and a half," the debtor "had not yet proposed a confirmable plan," and "the bankruptcy court found that successful confirmation of the fifth amended plan appeared to be unlikely"). Taken together, considering the near impossibility of Mr. Malloy proposing a confirmable Chapter 13 plan and his repeated opportunities to do so, the Bankruptcy Court did not abuse its discretion in converting the case to Chapter 7 without permitting Mr. Malloy yet another opportunity to amend his Chapter 13 plan.

## VI. Admonishment

This is the second dismissal of Mr. Malloy's appeals on the merits. *Malloy v. Schelin*, No. 3:24-cv-2 (MHL), ECF No. 37 (E.D. Va. 2025), *aff'd Schelin v. Malloy*, No. 24-2271, 2025 WL 3443443 (4th Cir. Dec. 1, 2025), *cert. denied*, — S. Ct. —, 2026 WL 1780201 (June 22, 2026). Especially given that the Court has not sustained any issue raised in Mr. Malloy's prolix appeals, including the 29 reviewed by the Court so far, Mr. Malloy is admonished that a third decision by this Court dismissing Mr. Malloy's appeal on the merits may result in the Court's imposition of a pre-filing injunction against him. *See Cromer v. Kraft Foods N. Am., Inc.*, 390 F.3d 812, 819 (4th Cir. 2004).

Case 3:25-cv-00417-MHL Document 27 Filed 09/01/26 Page 20 of 20 PageID# 9248

## V. Conclusion

For the reasons articulated above, the Bankruptcy Court appropriately found that Mr. Malloy acted in bad faith, that conversion from Chapter 13 to Chapter 7 was the only way to stop Mr. Malloy's "endless frivolous litigation" and facilitate enforcement of the Final Judgment, and that conversion would therefore be in Appellees' best interests.

Accordingly, the Court will affirm the Bankruptcy Court's Conversion Order and dismiss the appeal.

An appropriate Final Order shall issue

Date: 9|1|2026
Richmond, Virginia

/s/
M. Hannah Lauck
Chief United States District Judge